## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SAKARI JARVELA,

  Plaintiff,

    v.

CRETE CARRIER CORPORATION,

  Defendant.

CIVIL ACTION
No. 1:11-cv-2486-SCJ

## <u>O R D E R</u>

  This action alleging violations under Title I of the American with Disabilities

Act ("ADA"),[1] and the Family Medical Leave Act ("FMLA") is before the Court on

motion for summary judgment by Defendant Crete Carrier Corp. ("Crete") [Doc.

No. 33].

## I. BACKGROUND

  Crete—a trucking company—employed Plaintiff Sakari Jarvela as a driver. On

April 27, 2010, Crete terminated his employment.  Mr. Jarvela asserts that at the time

of his termination he was an individual with a disability in that he was diagnosed

with alcoholism.  According to Mr. Jarvela, he notified Crete of his condition and the

---

[1] The ADA was amended by the ADA Amendments Act ("ADAAA") of 2008.  Pub. L. 110-325, 122 Stat. 3553 (2008).  The Act, as amended, went into effect on January 2, 2009, before the conduct giving rise to this action occurred.  Thus, the ADA as amended in 2008, applies in this instance.

need for leave under the FMLA.  Mr. Jarvela was approved for leave from March 18, 2010, through June 6, 2010, and he began treatment on March 21, 2010.  On April 26, 2010, Mr. Jarvela was evaluated and was certified to return to work without restrictions for six months.  The next day, Mr. Jarvela met with his terminal manager to discuss his return to work.  He was informed that he could not return to his former position at Crete and was given the option to resign or be discharged.

Mr. Jarvela filed this complaint on July 28, 2011.  Count I of the complaint alleges that Crete discriminated against him based on his disability in violation of the ADA.  Count II alleges a violation of the FMLA resulting from Crete's alleged failure to return Mr. Jarvela to his former or equivalent position following his FMLA qualified leave.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

---

[2] On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective.  The amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens."  Committee on Rules of Practice and Procedure, Report of the Judicial Conference, p. 14 (Sept. 2009).  *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011).  "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a). Adv.

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party discharges its burden merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing

Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.). "Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule." *Murray v. Ingram*, No. 3:10-CV-348-MEF, 2011 WL 671604, at *2 (M.D. Ala. Feb. 3, 2011).

a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine [dispute] for trial." *Id.* (citations omitted).

## III.   ANALYSIS

### A.   ADA VIOLATION (COUNT I)

An employer covered under the ADA may not "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Either disparate treatment or disparate impact constitutes unlawful discrimination under the ADA. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003). Additionally, under certain circumstances, "[a]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because

of his disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).

Crete argues that Mr. Jarvela cannot establish a claim for disability discrimination under the ADA, whether brought under the theory of disparate impact, disparate treatment, or failure to accommodate. First, Crete argues that Mr. Jarvela is not disabled under the ADA. Second, it argues that Mr. Jarvela is not an ADA qualified individual. Third, taking a three pronged approach in arguing that Mr. Jarvela was not discriminated against, Crete contends that: (1) Mr. Jarvela was not entitled to a reasonable accommodation and, even if he was entitled, there was no way to reasonably accommodate his disability; (2) he was not treated disparately, as it cannot be reasonably inferred that his alleged disability was a determining factor in his termination; and (3) Crete is not liable under the disparate impact theory, as its safety qualification standards are job-related and consistent with a business necessity.

### 1.   DISABILITY

An individual with a disability under the ADA is one who: (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as the "operation of a major bodily function." § 12102(2). Moreover, an individual is regarded as having a qualifying impairment if it is "established that he or she has been subjected to a[] [prohibited] action . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A).

Crete argues that alcoholism, the disability claimed by Mr. Jarvela, does not substantially limit a major life function. First, Crete notes that Mr. Jarvela has failed to identify any limitations in a major life activity due to his alcoholism and has conceded that his alcoholism did not limit his ability to perform a major life activity at the time of his termination. Second, Crete contends that Mr. Jarvela's alcoholism did not substantially limit his ability to work—a major life activity.

The 2010 EEOC regulations interpreting the ADA defined the term "substantially limits" with regard to the major life activity of working as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having

comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (2010).[3]  Crete takes the position that the EEOC regulations in place in 2010 apply, as the alleged ADA violation at issue occurred that year.  Accordingly, Crete argues that although Mr. Jarvela's alcoholism disqualified him from working as a driver under the Department of Transportation ("DOT") regulations and Crete's safety standards, he has failed to show that he was unable to perform either a class of jobs or a broad range of jobs in various classes.[4]

Next, Crete maintains that under the second prong of the disability test Mr. Jarvela cannot establish a record of being impaired because he has not shown that

---

[3] This definition is eliminated from the EEOC regulations interpreting the ADAAA, which went into effect on May 24, 2011.  The EEOC regulations effective May 24, 2011, state that the term "'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i).  Accordingly, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. " § 1630.2 (j)(1)(ii).

[4] The Court is unpersuaded by Crete's argument that the EEOC regulations in place in 2010 should be applied in the present instance.  As amended, the ADA provides that "the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." ADA Amendments Act Of 2008, PL 110–325, § 3, 122 Stat 3553.  As the EEOC regulations in place in 2010 were based on the ADA prior to its amendment in 2008, those regulations are inapplicable to conduct that occurred after the ADAAA went into effect.  In reaching this conclusion, the Court also finds persuasive the EEOC's interpretative guidance on the ADAAA, which states: "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, not—whether the individual meets the definition of disability." 29 C.F.R. Pt. 1630, App.

his impariment substantially limited him in a major life activity and he has not shown that Crete had documents indicating that he had such an impariment. Lastly, Crete argues that Mr. Jarvela is not disabled under the third prong of the disability test, as Crete did not regard him as disabled but rather discharged him because he failed to meet Crete's safety qualification standards.

Mr. Jarvela argues that he has a substantially limiting impairment under the ADA. He argues that although his alcohol dependence is in remission, when active it would substantially limit the major life activities of caring for himself, concentrating, thinking, and working. Mr. Jarvela also maintains that his FMLA paperwork created a record of impairment and that Crete reviewed this record before terminating his employment. Lastly, Mr. Jarvela contends that Crete regarded him as having an impairment.

For the purposes of this motion only, the Court assumes that Mr. Jarvela is disabled under the ADA.

## 2.   QUALIFIED INDIVIDUAL

A qualified individual under the ADA is one who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R.

§ 1630.2(m).  Crete argues that Mr. Jarvela is not a qualified individual because he was not qualified as an over-the-road driver pursuant to DOT regulations, an essential requirement under his job description.  According to Crete, Mr. Jarvela had a current clinical diagnosis of alcoholism at the time of his termination, and, thus, he was not qualified to drive under DOT regulations.  Mr. Jarvela disputes this contention by noting that after completing his four-week treatment for alcoholism he was cleared by a DOT-certified physician to drive for a period of six months.  But Crete argues that the physician clearance set a minimum qualification and Crete had the ultimate authority to decide whether Mr. Jarvela met Crete's more rigorous standards for its drivers and that Mr. Jarvela was *per se* disqualified to drive a commercial vehicle under the DOT regulations due to his diagnosis of alcohol dependence.

The Court agrees that Mr. Jarvela is not a qualified individual.  This conclusion is based on some of the very reasons detailed in the Court's discussion of the unlawful discrimination prong of Mr. Jarvela's prim facie case.  As those reasons are discussed in detail in the following section, they are merely outlined here.  First, it is undisputed that, at the time of his termination, Mr. Jarvela was diagnosed as having alcohol dependence—another term for alcoholism.  Although he was cleared to drive by a DOT-certified physician, the DOT regulations provide

that an individual with a current clinical diagnosis of alcoholism is unqualified to drive a commercial motor vehicle.  Second, Mr. Jarvela was unqualified to drive under Crete's policy.[5]  While Mr. Jarvela argues that the policy was unwritten and he was unaware of it, he fails to rebut Mr. Coulter's testimony indicating that the policy existed in fact.  Accordingly, Mr. Jarvela has failed to establish that he met the job-related requirements that would have qualified him to drive for Crete with or without a reasonable accommodation.

### 3.    UNLAWFUL DISCRIMINATION

Even assuming Mr. Jarvela has a disability and is a qualified individual under the ADA, Crete is entitled to summary judgment on Count I of the complaint as Mr. Jarvela has failed to rebut Crete's showing that he was not subjected to unlawful discrimination because of his disability.

### a.    DISPARATE TREATMENT

To establish a prima case of disability discrimination based on a showing that "the adverse action took place in circumstances raising a reasonable inference that

---

[5]  Mr. Jarvela argues that Crete acknowledged that he was qualified to drive for Crete because it processed his return-to-work paperwork and issued him a Crete card, indicating that he met all of Crete's requirements to return to work.  However, Mr. Coulter testified that the final decision as to a driver's qualification to drive for Crete rests with his department [Doc. No. 36-12, 74:23–75:02], and, in the case of Mr. Jarvela, the Crete card was issued in error as Mr. Coulter had determined that Mr. Jarvela did not meet the qualifications necessary for him to drive for Crete [*Id.* at 75:12–21].

the plaintiff's disability was a determining factor in the decision." *Haines v. Cherokee Cnty.*, 1:08-CV-2916-JOF/AJB, 2010 WL 2821853, at *24 (N.D. Ga. Feb. 16, 2010), *report and recommendation adopted as modified*, 1:08-CV-02916-JOF, 2010 WL 2821780 (N.D. Ga. July 15, 2010). Under the *McDonnell Douglas* burden-shifting framework, an employer may rebut the employee's prima facie case by providing a "legitimate, nondiscriminatory reason for the challenged action." *Nadler v. Harvey*, 06-12692, 2007 WL 2404705, at *4 (11th Cir. Aug. 24, 2007). The employee may then "meet the ultimate burden of proof by proffering sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual." *Id.* (internal quotation marks omitted).

Crete argues that Mr. Jarvela has failed to meet his burden of showing that he was subjected to disparate treatment, as he has presented no evidence showing that other similarly-situated, non-disabled Crete employees were treated more favorably. However, Mr. Jarvela's "failure to produce a comparator does not necessarily doom" his case. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, Mr. Jarvela "may raise a reasonable inference of [Crete's] discriminatory intent through various forms of circumstantial evidence." *Id.*

Here, Crete terminated Mr. Jarvela's employment when Mr. Jarvela sought to return to work after having undergone treatment for alcohol dependence. Although

-11-

he was certified by a DOT physician to return to work as a driver, Crete determined that Mr. Jarvela was unqualified to return to work. Mr. Jarvela had not violated Crete's written policy regarding alcohol consumption. Under these circumstances, a reasonable inference is raised that Mr. Jarvela's impairment was the determining factor in Crete's decision to terminate his employment.

Mr. Jarvela's claim must fail nonetheless because Crete has proffered sufficient evidence to indicate that it had a legitimate and nondiscriminatory reason for terminating Mr. Jarvela and Mr. Jarvela has failed to show that Crete's reason was pretextual. Crete contends that it discharged Mr. Jarvela because his diagnosis of alcohol dependence rendered him unqualified to drive for Crete under DOT regulations as well as Crete's own safety standards and because his driving of a commercial vehicle for Crete would pose a safety risk.

Mr. Jarvela argues that Crete's reason for discharging him was a pretext. First, Mr. Jarvela asserts that Crete's claim that Mr. Jarvela was disqualified to drive under DOT regulations is false. According to Mr. Jarvela, a licensed medical examiner must be the one to make the diagnosis of current alcoholism. Mr. Jarvela argues that instead of deferring to the DOT-certified physician's clearance of Mr. Jarvela for work, Crete's Vice President of Safety and Compliance, Raymond Coulter, came to his own conclusion about Mr. Jarvela's condition.

Crete's reason for discharging Mr. Jarvela is not so easily disposed as pretextual. Mr. Coulter reviewed documents related to Mr. Jarvela's treatment, including a letter from Mr. Jarvela's counselor, Mr. Yoakum, at his treatment clinic. Mr. Yoakum's letter noted Mr. Jarvela as having alcohol dependence—a term, according to Mr. Yoakum, which is equivalent to alcoholism [Doc. No. 38-1, 25:20–22]. Under the DOT regulations, a driver with a "current clinical diagnosis of alcoholism" is not qualified to drive a commercial motor vehicle. 49 C.F.R. § 491.41(b)(13). On the one hand, Mr. Coulter was aware that the DOT-certified physician cleared Mr. Jarvela for work but, on the other hand, Mr. Coulter was also aware that Mr. Jarvela's treatment counselor had diagnosed him with alcohol dependence or alcoholism. Based on Mr. Yoakum's letter, it was reasonable for Mr. Coulter to conclude that Mr. Jarvela's had a then existing diagnosis of alcohol dependence and that the diagnosis rendered him *per se* unqualified to drive under the DOT regulations. Thus, Mr. Coulter's determination that Mr. Jarvela was disqualified to drive was neither unreasonable nor inconsistent with or unsupported by the evidence before him.

Second, Mr. Jarvela maintains that Crete's policy of disqualifying any driver who has an alcohol-related incident or event for a period of five years is merely a post-hoc justification. According to Mr. Jarvela, no such policy existed at the time

of his discharge, as he was unaware of the policy and as it was not a written policy. However, Mr. Jarvela has failed to rebut evidence indicating that the policy was in place as Crete had discharged other drivers under the policy.  For instance, Mr. Coulter testified that he has terminated other drivers for issues related to alcohol under the policy  [Doc. No. 33-7, 13:11–16:10].  Thus, Mr. Jarvela has failed to show that Crete's reason for discharging him was a pretext for unlawful discrimination, and Crete is entitled to summary judgment on Mr. Jarvela's claim of discrimination based on disparate treatment.

### b.   FAILURE TO ACCOMMODATE

An employer violates the ADA by failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee."  42 U.S.C.A. § 12112(b)(5)(A).  "[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

Crete argues that Mr. Jarvela made no demand for an accommodation and that no reasonable accommodation was available.  According to Crete, Mr. Jarvela attended a conference call with Mr. Coulter on April 27, 2010, during which he was informed that he would be terminated.  At that time, Mr. Jarvela did not ask whether

he could work in a non-driving position for Crete.  Mr. Jarvela disputes Crete's contention that he failed to ask for an accommodation.  According to Mr. Jarvela, he asked Mr. Coulter if there was "any way we could work this out" [Doc. No. 36-5, 145:6–9].  Moreover, Mr. Jarvela contends that he was not given the time during the brief conversation with Mr. Coulter to further explore the issue of accommodation.  During his EEOC pre-determination interview, however, Mr. Jarvela expressed a willingness to take on a position as a day-time driver or a regional driver rather than an on-the-road driver and to move to another location if necessary [Doc. No. 36-5, 150:22–151:25].

Even if Mr. Jarvela is considered to have requested an accommodation, he has failed to establish that the accommodation he sought was a reasonable one. According to Crete's understanding, Mr. Jarvela's diagnosis of alcohol dependence disqualified him from holding any driving position with Crete under its own policy as well as DOT regulations.  As discussed above, that understanding was not unreasonable under the circumstances.  Thus, Crete could not have reasonably accommodated Mr. Jarvela by transferring him to a day-time driver or regional driver positions.  And there is no indication that Mr. Jarvela has ever sought a non-driving position as an accommodation.   As such, Mr. Jarvela's claim of discrimination under the failure to accommodate theory fails.

### c.     DISPARATE IMPACT

"[D]isparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).  To establish a prima facie case of disability discrimination based on a theory of disparate impact, an employee must not only identify the specific employment practice but must also "demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination." *Kintz v. United Parcel Serv., Inc.*, 766 F. Supp. 2d 1245, 1254 (M.D. Ala. 2011).   Mr. Jarvela contends that Crete's rule authorizing an employee to make medical determinations rather than deferring to the determinations of licensed medical practitioners has a disparate impact on individuals with disabilities.  He has offered no evidence to demonstrate causation. Moreover, there is no evidence that Crete has a rule authorizing lay persons to make medical determinations.  In the context of Mr. Jarvela's diagnosis, Mr. Coulter did not make an unsupported medical determination.  As noted above, Mr. Coulter based his determination that Mr. Jarvela had a current diagnosis of alcoholism on the diagnosis supplied by Mr. Yoakum, Mr. Jarvela's treatment counselor.

Accordingly, Mr. Jarvela cannot maintain a claim for disability discrimination based on disparate impact.

### B.   FMLA VIOLATION

Mr. Jarvela alleges that Crete interfered with is right to return to his job following his FMLA leave and that he was retaliated against for exercising his right to take leave under the FMLA.

1.      **INTERFERENCE**

To establish an interference claim under 29 U.S.C. § 2615(a)(1), "an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1266–67 (11th Cir. 2008). Under 29 U.S.C. § 2614(a)(1), an employee who takes FMLA leave has the right to return to a position which is the same or equivalent to the one he or she held prior to taking leave. The right to return, however, "is not absolute; an employer can deny reinstatement if it can demonstrate that it would have discharged the employee had he not been on FMLA leave." *Martin*, 543 F.3d at 1267 (internal quotation marks omitted).

Mr. Jarvela argues that Crete's reason for discharging him was related to his FMLA leave. According to Mr. Jarvela, Crete wrongfully substituted its own determination as to his qualification to return to work in place of that of the DOT-certified physician and his treating physician. And as the reason for taking FMLA leave was to facilitate treatment for alcohol dependence, Mr. Jarvela contends that Crete's refusal to allow him to return to his position was related to the leave. Crete, on the other hand, maintains that it refused to allow Mr. Jarvela to return to work not because he took FMLA leave but because his diagnosis of alcoholism rendered him unqualified to drive under the DOT regulations and Crete's policy.

-18-

Mr. Jarvela has failed to show that a genuine dispute of material fact precludes summary judgment over his claim of FMLA interference.  Regardless of whether Mr. Jarvela had taken FMLA leave, there is ample, unrebutted evidence in the record to indicate that Crete would have discharged him upon learning of his diagnosis of alcohol dependence.  While, resting on his physician-signed clearance to drive, Mr. Jarvela strenuously objects to Crete's determination that he was unqualified to drive for Crete, he points to nothing in the record to indicate that Crete would have reached a different conclusion had he not taken FMLA leave.  Accordingly, Mr. Jarvela's FMLA interference claim fails.

### 2.   RETALIATION

FMLA prohibits an employer from discriminating against an employee for exercising a right under the FMLA.  29 U.S.C. § 2615(a)(2).  "Absent direct evidence of retaliatory intent," an employee may establish a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting framework by showing that "(1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Martin*, 543 F.3d at 1268.  If the employer, however, succeeds in "articulat[ing] a legitimate reason for the adverse action," the employee must show that the "proffered reason was pretextual." *Id.* at 1268.  Here, the parties dispute over whether Crete's decision

to discharge Mr. Jarvela was causally related to his taking FMLA leave.  Mr. Jarvela contends that the requisite causal connection is established by the fact that the individuals involved in making the decision to terminate Mr. Jarvela, including Mr. Coulter, had access to Mr. Jarvela's file containing the notation that he was out on FMLA leave and the fact that his termination occurred as he attempted to return from FMLA.  Crete argues that Mr. Coulter did not have actual knowledge that Mr. Jarvela was out on FMLA leave and that temporal proximity is insufficient to establish a causal connection in the absence of actual knowledge on the part of Mr. Coulter—the individual who made the decision to discharge Mr. Jarvela.  The Eleventh Circuit's decision in *Brungart v. BellSouth Telecomms., Inc.* supports Crete's position.  231 F.3d 791 (11th Cir. 2000).  *See also Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) ("Temporal proximity alone, however, is not sufficient to establish a causal connection when there is unrebutted evidence that the decision maker was not aware of the protected activity.").

Here, Mr. Jarvela has offered no evidence to indicate that Mr. Coulter was aware that Mr. Jarvela had taken FMLA leave.  Mr. Coulter testified that he was not involved in the decision to approve Mr. Jarvela's FMLA leave request and that he was unaware that Mr. Jarvela had taken FMLA leave [Doc. No. 36-12, 19:21–20:06].  And he also testified that he reviewed only certain parts of Mr. Jarvela's record in

making his determination to terminate his employment and did not see the portion of the record that noted that Mr. Jarvela had taken FMLA leave [*Id.* at 112:04–15]. Accordingly, Mr. Jarvela has failed to establish a prima facie case of retaliation under the FMLA.

Even if the Court assumes that Mr. Jarvela successfully established his prima facie case, his claim still fails as he has failed to show that Crete's reasons for terminating his employment were a pretext for discriminating against Mr. Jarvela for taking FMLA leave.  Crete opposes Mr. Jarvela's claim for retaliation under the FMLA, by arguing that it discharged Mr. Jarvela not because he took FMLA leave but because he failed to meet the qualifications of a commercial vehicle driver under DOT regulations and Crete's policy.  Mr. Jarvela maintains that Crete's reasons are pretextual as he had been certified to drive by a DOT qualified physician and as Crete's policy disqualifying a driver for five years for an alcohol-related incident was a post-hoc justification. The Court disagrees.  As discussed above in the Court's analysis of Mr. Jarvela's claim of disparate treatment, Crete's determination that Mr. Jarvela was disqualified to drive for Crete was reasonable.  Moreover, even if Crete's determination as to Mr. Jarvela's qualification was unreasonably motivated by "fears about a possible relapse and Crete's inability to accommodate" [Doc. No. 36, 11], this merely shows that Crete refused to let Mr. Jarvela return to his position

because of its perceptions of Mr. Jarvela's impairment.  Mr. Jarvela has failed to explain how that motivation was tied to an intent to discriminate against Mr. Jarvela for having taken FMLA leave.  As such, Crete is entitled to summary judgment on Mr. Jarvela's claim of FMLA retaliation.

**IV.    CONCLUSION**

For the above mentioned reasons, Defendant's motion for summary judgment [Doc. No. 33] is **GRANTED**.  As no claims remain pending, the Clerk is **DIRECTED** to terminate this action.

**IT IS SO ORDERED**, this 14th day of March, 2013.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE